519-0041, Dante Beattie v. The Workers' Compensation Commission Counsel, you may proceed Mr. McWhorter, Mr. Townsend, this is not true One, we have a situation involving a preserving individual who had a polio claim who was clearly employed by the entity who was issued him a W-2 and issuing a gate pass and with whom he interviewed and with whom he checked in every single shift You clearly do not have the individual who is being paid or anyone considered to be entitled to overtime The whole issue is going to turn, I think, the primary issue is who controlled the employer, the employee and his work activities The claimant himself testified that the respondent controlled all of his duties and assignments for Metrolink Metrolink provided the uniform, provided the instrumentalities, had the right to allow him to do this, the right to terminate him What control did Metrolink have over his job assignments and duties? He couldn't get the job unless he passed muster with Metrolink They insisted that he check in every single shift with Metrolink He's working at a Metrolink-specific location He's working on a railroad area, light rail, as opposed to his directional activities for the county Could Metrolink discipline him in any way? Could they fire him? They could, they hired him. If they could hire him, sure they could fire him You're saying that, but the record belies that That is true, and as far as the discussion about whether or not the county controlled everything The testament was, and it was clear from Mr. Beatty, they controlled scheduling There's no evidence at all that Metrolink didn't have what all of us would, what our intuitions would tell us it had Some right to control what was going on on its own facility after he checks in with them And again, in light of the fact that he had to interview with them There's nothing at all that indicates that the county was the sole employer There's nothing at all that indicates that Metrolink didn't have those abilities What's the import of the uniform that was worn and the possession of equipment? I think that the import is that the county had something to do with this And we're not disputing that We're just saying that there is no one in the world, and there's no testimony That the county had sole control over the gentleman's activities Does it have to be sole control? Does the law require it to be sole control? I believe it. We're going to say that Metro was not an employer, which is the finding of the commission We have to find that somebody else was the sole employer And were the county to have control, and we agree they did There's nothing at all to indicate that Metro was not an employer Metro issues a W-2 that right on it says, we are the employee, the employer The county issues a W-2, but the county's W-2 doesn't include the wages paid by Metro So your theory of recovery, this is concurrent with employment Yes, sir And that, therefore, it's not overtime, so it has to be brought into for the wage That's true, Your Honor Right It wasn't overtime, the county did pay overtime The county paid overtime for work done as a correctional officer The county didn't pay overtime for, for that matter, any money at all For the work done at Metro It was different than the amount you paid working for the house Sixteen dollars and some cents versus twenty-some dollars and cents Did the arbitrator find that the county reimbursed MetroLink for any money they paid the claimant? I believe that she did, and she also found that this was concurrent with wages But in spite of that finding, which was erroneous, she found that the petitioner was Why do you say it was erroneous? Because when you look at Exhibit 6, it doesn't say what the respondent's brief says It doesn't say what the arbitrator says, it doesn't say what the judge says When you look at the brief Is there evidence that they didn't reimburse the MetroLink for the wages paid to the claimant? Well, there's a financial agreement that doesn't mention that, but does mention exactly the opposite It talks about the district, being the rail district, reimbursing Metro It talks about the Metro taking care of any comp claims that are filed by deputies It talks solely about payments to the county from Metro Or about intergovernmental payments by the district to Metro Nowhere in the world does it say, and I appreciate your honesty, I am questioning myself I see that every one of the triers of fact here said that the county paid Metro And when you look at that document, those words do not exist So you're saying the document, to sum it up, is that document is more of an indemnity to the county? Yes For example, the workers' comp that you just brought up Yes, that's what it is Now curiously Now how would you interpret that if it's more of an indemnity type of agreement? That that would establish separate employment, concurrent employment? I believe that it would be interpreted as Metro is the employer If somebody else has some of the payments and it's termed the Metro Payment Act However, the document that we're talking about was entered into after the injury And before the termination by the county It's a curious document because it doesn't really take into account the proper time period Now, I believe it's a proper agreement because the documentation, the 6th, refers to a contract between the county and Metro You have to think, if we have a situation where this gentleman is working one place and he's wearing a county uniform There's some understanding as to who controls There's some understanding about what the financial picture is, but also other pictures The county doesn't introduce that document Wait a minute, wasn't he wearing the county uniform? Yes, sir, he was wearing the county uniform And they provided all the equipment, right, not Metro I mean, he wore a weapon with him Yes, sir And we again agree that the county has an employer We're not disputing that Yes, he was wearing the uniform, certainly But Metro is the location he was working He wasn't doing correctional work, which is what he's paid by the county to do He's a county correctional officer He's a Metro-linked safety officer He's performing totally different activities Okay, then how do you distinguish this case from the Chicago Housing Authority case In which, in that case, the employee was a Chicago police officer Performing duties for the Chicago Housing Authority While working part-time under a special employment program So here you have the county officer working for Metro-link The Chicago police officer working for the Chicago Housing Authority In that case, they held he remained employed by CPD Justice, I might be asking that Because in the Chicago case, the gentleman is working where he always worked for Chicago He is working in a housing authority area That he worked when he was employed directly and solely by the Chicago police So this turns out the place he's working at? That's an issue, sir, but not the only issue Another issue is, Chicago Police Department paid this petitioner for the work he was doing In our case, Metro pays the petitioner for the work he's doing Again, Chicago pays him for the work It was hard to see that the housing authority was the employer An employer, when he's not being paid by them When he's paid instead by the city of Chicago And that finding was critical to the decision And if the finding is critical to analyze Whether a person is employed by a certain entity Then it certainly goes in BB's favor here But in that case, let me just interject this before I finish up The case turned down, the case noted That relying primarily on the fact that CPD maintained control over the claimant While he was working in the program They provided the instrumentalities of the claimant's employment Basically, they held that the control factor was the key factor Again, Metrolink can't discipline him, they can't fire him He has to give all of his reports, as I understand it, to the county If there's an arrest or something, he reports to the county, not to Metrolink The issue in Chicago was control And in order to determine control They had to determine who was paying this gentleman And in order to determine control One of the other issues was Was he doing the same job that he was told control to do by the police department And he was But, there is no evidence here that this gentleman Turned in reports to the county If an arrest were made I mean, if he's working as a correctional officer And he's arrested on the day of his jail He's going to be called to county At E. St. Louis, at Fifth and Reserve, in Kernshock this morning He calls E. St. Louis He doesn't call the county The only time he calls the county is if there's a warrant out through the county But if there's an infraction there He calls E. St. Louis He doesn't call the county I think that there is... So you're saying there's a jurisdictional difference When he's employed with Metro Yes, so there's a jurisdiction, yes Which is why he's taking or calling the city Versus the county I think that that's right It's just not a situation where he's a county employee And therefore he calls the county when he sees an infraction At that point, he's also a Metro employee Metro having intervened Metro to whom he reports every single shift Every single shift he reports to Metro He's working on Metro property He's performing functions integral to Metro's safety concerns Which according to the document, Exhibit 6 Are mutual concerns of the county and Metro So we have an incredibly deserving gentleman Who absolutely lost He absolutely took a hit there And the function of the Workers' Comp Commission The Workers' Comp Law Is of course to make sure that people don't take that financial hit When they're injured He is absolutely injured, there's no question about it He takes a major financial hit And then we pretend, no, no What he was getting with his overtime That is disingenuous The county doesn't really pay him any overtime at all for this service Or pay him at all And the money he receives solely from Metro Is substantially less than he's paid by the county So we have a deserving individual He is certainly employed by Metro He certainly is not getting overtime And that is a shell game He's certainly not getting overtime And the decision here is contrary To the importance of the Workers' Compensation Law Thank you Do I have time on Report 5? Thank you Good morning, Mr. Nelson  Mr. Nelson First of all, I want to argue Your name? Oh, my name's Bob Thompson, sorry Yeah, okay, thank you They have me here in Chapel Hill And I'm not here in Chapel Hill As the administration would say The first thing I want to argue Is not something that was necessarily pointed out in that report But I was just thinking about it As I was sitting here listening to this Even if we assume that this person was an employee of Metro And nobody else was reimbursing Metro for it The decision with regard to the average wage is still correct And why is it correct? Because there's no proof as to what the employee would have earned If he had continued with his employment at Metro There is no testimony whatsoever That he would continue to earn the same amount or more Than what he would have earned there As a matter of fact, we stipulated what he would have been making for the sheriff Which was greater than what he was making at the time So therefore, even if he is an employee Which he kind of is There's no evidence of additional concurrent income At the time of the hearing Which is what we base the wage differential on What the employee is making at the time of the hearing Versus what the employee would have been making in the fall of employment But for the accident He is saying that but for the accident He would have been continuing to work full time But he would have been facing Metro as well Because he couldn't work for Metro If he wasn't working for the county He says he's not working for the county He couldn't work for Metro anyway But there was no evidence as to what he would have been making At the time of the hearing for Metro Even if he were an employee Run that by in a very summary fashion for us If you would, please Well, the award is correct in the average weekly wage Because there's no evidence Indicating that the commission and the arbiter Should consider any amount more than The wages he would have earned At the sheriff's department Based upon the stipulation So you're saying it's a failure of proof on the secondary job Absolutely Absolutely So that's one overarching basis What about the control issue? He's saying that clearly he was employed by Metro No, he wasn't Tell us why he wasn't The employee was asked on The stipulation, the present stipulation It's on a record of P674 He was asked whether or not The sheriff controlled his activities And his schedule And he stated that the sheriff Controlled all job duties and assignments For Metro I don't know how much more clear to do There was no indication by anybody On behalf of Metro That they did anything Other than let him work on their premises There's also no indication that He had passed the application But that the application served Anything more than a way of getting To that employment Because he was only offered the sheriff's services That was the first part And then the sheriff had the opportunity To select whoever he wanted to He didn't have to select anybody Unless he wanted to that day In the middle of the park, no list In terms of seniority, etc. He could just pick and choose Well, they went to Metro, they filled out an application They had an interview, but there's no testimony As to what that did or did not do With regard to the decision For him to be able to work But in any event, he could absolutely not work there Unless the sheriff's department allowed him to Absolutely There was no rule saying that even if you applied For this position with the sheriff's department You would get it, or even if you were accepted for it They were going to call you Could Metro only fire him? No As a matter of fact, it was pointed out in the record That he was terminated by the sheriff's department He never received anything from Metro With regard to his employment status He also said that every shift he reported to Metro If you look at the testimony Before he said he reported everything To the sheriff's department And only toward the end of the year In which he was working for Metro Did he start reporting to Metro That he was on the job There was no testimony to report any incidents To Metro Just that he was on the job He also testified that he also contacted the sheriff's department Every day that he showed up There was testimony that if he couldn't make a shift He may get another sheriff's deputy to do it He wouldn't call Metro To have him replace somebody He called the sheriff's deputy And they assigned him It was also explained that If there was a problem in the middle of the shift He didn't contact Metro He contacted the supervisor On the job There was a supervisor from the sheriff's department On site When I asked Councilman about the Chicago Housing Authority case He latched onto Sort of a geographical argument That that doesn't apply Because he's still working on the Chicago premises What did you make of that response? I think the location matters a lot Because the nature of his duties Was to maintain order And work on Bridges of Peace He's a sheriff's deputy He's a sheriff's deputy For St. Clair County Is that correct? Did he patrol any Metro-linked property Outside of St. Clair County? No So his jurisdiction is all of St. Clair County Correct And that's why they turned over People who didn't have warrants for the county To the St. Louis Department Within their jurisdiction The commission on review Found that he testified that A respondent From the sheriff's department Controlled all aspects Of his job duties and assignments As a correctional officer As well as All of his job duties and assignments As a safety officer with Metro-link Did he testify to that? Yes he did If you look at page 874 Of the letter He was specifically asked that question And he stated the sheriff controlled All job duties and assignments You certainly know They assigned all But he also said They controlled all duties And so there's absolutely no indication That there was any control Now look at the Chicago Housing Authority case And our situation And the only difference I can see Is that He was talking about pay Let's assume that In that case The Chicago Housing Authority did pay him Or somebody coming from the city of Chicago Whether it's the police department or housing authorities The same ball waxed He said that there was nothing in the agreement The reimbursement agreement Which was admitted to evidence without objection So it could be considered for what it was worth And he said In the Third paragraph, third whereas The district contracts with Bi-State to reimburse Bi-State for the cost of paying police services Upon Metro-link trains and properties From the county and sheriff The county doesn't reimburse But certainly Bi-State does And Bi-State is not Metro Bi-State is not Metro-Link? No, Bi-State is I'm sorry We contracted with Bi-State But it was the Missouri-Illinois Metropolitan District Also called Bi-State So that district Was set up as part of the overarching Control of the Metro Because it's in Missouri and Illinois Reimburses Metro for the payments And that agreement What it really did It just added another paragraph saying That in addition to Reimbursing Metro for the wages We're going to reimburse the county For the cost of the workers' Compensation plans Because up until that point And I've been representing the county for 30 years We were carrying the whole fight On workers' compensation So people who got hurt in Metro The record indicates here We paid all mental illness We paid all lost time All temporary partial disability We even paid wage differential benefits At the time of the hearing Before you conclude, could you reiterate the argument That hadn't been made before about Why there's a failure proof on the wage differential Yes, sir And what's your argument there? There's no evidence There's no evidence as to what he would have been making In the Metro job At the time of the hearing We knew what he was making back At the time of the accident As we knew what the St. Clair County Sheriff's Department Was paying at the time of the accident But that's not a wage differential case It's based on the wages That the employee could have earned In the full employment But for the accident He saved his full employment Not only for the Sheriff's Department But it included Metro He didn't know if Metro was still hiring sheriff's deputies Can I ask you a question? Sure What's the relationship between Bi-State Development and MetroLink? Bi-State Development is The entity that was created To communicate with Bi-State A contract with Bi-State That is MetroLink and Bi-State For services in both Illinois and Missouri Okay Who issued the W-2 form for this meeting? Metro According to the commission decision It was issued by Bi-State Well, if you It's confusing because Bi-State can refer to either MetroLink, which is the Bi-State It's part of Bi-State The transit Buses, trains, etc And Bi-State which refers to The Missouri-Illinois Metropolitan District Which they also refer to as Bi-State So Bi-State is confused They say that the 2013 W-2 Was issued by Bi-State Development Agency And I asked My question is, what's the development fee? No, that's incorrect I'm reading from your decision Petitioner submitted a 2013 W-2 Issued by Bi-State Development Agency to the petitioner No It was admitted into evidence as Plaintiff's Exhibit 12 No, it was Metro But even if Metro paid him There was no reimbursement He still did not prove that he was employed There are several factors that you have to use In order to determine what an employee is As the Chicago Authority said The right to control the manuals, the work that's done Method of payment, right to discharge, skill required Work done, furnishing, tools and materials All of those are factors And not one is more important than the other You've got to look at all Control is the most important Control, absolutely And there's no evidence whatsoever That Metro controlled him at all Thank you I'm sorry Thank you, Counsel Counsel, may I have Excuse me, a reply Can you respond to this failure of proof argument? Yes, of course The fact is And the law is quite clear That The issue is to assume That but for the injury He would continue in The full performance of his duties That's case law There's no doubt about that It's hard for somebody to show What will happen in the future So a person is allowed to base his Wage differential On What the last Earnings were But the theory of AT2 is that one assumes That he would continue in the full performance of his duties I thought it was the full performance Of his duties and the Wages paid for that job At the time of the arbitration What do you mean it could be that? I mean it could be at the time of injury Rather than the arbitration Why could it be at the time of injury? I mean these arbitrations Take place in most cases Four or five years after the injury And so you look at the You look at the wage being Paid at the time of the arbitration And you calculate the wage differential Based on that That becomes the wages Not what he was earning five years ago That doesn't make them whole No sir it doesn't You're right, I believe that one is Supposed to use the latter wages Because those should be the higher wages But often times a person can't prove What the latter wages would be That is the end of person Why can't he prove Why can't he prove what a person Performing that job That he used to have On the date of the arbitration Is making Most times it's done with a union contract Other times it's just done by Someone testifying how much a person In that job gets paid today Initially I believe the law is Really clear that you can use the wage At the time of the injury If you don't know what the wages are Do you have a case that says that? Yes sir I didn't know the issue was going to come up your honor I don't have a case handy But I believe that it's I don't think there's difficulty finding it But to answer your question Why doesn't an employee say what others would think Is because he doesn't have control Of that information No, no He puts on a witness to testify to that Like the business agent From the union comes in and says A Carrying plumber is making X number Of dollars an hour today And so this injured Is differential based upon That number Not what he was earning five years earlier I agree that if you Are lucky enough to represent One of the seven percent of Employers who are covered by a union You introduce the contract It's not hard But when you have a situation where a person Hasn't worked for a plumber for six years It's hard for him to know what Current people are making Here's the question really All of that aside Is it as a matter of law Required to show at the time Of arbitration what He would have been making on that Date from that Concurrent employer Yes sir, I think it is What No Softballs here Okay Is it as a matter of law required To show and or To prove That on the date of arbitration That is what the Prevailing wage is in that concurrent employment Of which he is no longer an employee Or is it sufficient That there is sufficient proof In the record Of what he was making at the time of injury The latter And I appreciate you bringing that Question up your honor Sorry I missed it I've never heard of such a case I've only been here 20 years I don't know I just believe that that is Absolutely certain That one can use And have done it many times The early time of the injury If he doesn't know what the earnings were I know of no case law that says that I mean when you say He doesn't know That's a little different than He failed to introduce evidence Of But as a matter of law Is he required to do so No sir he is not required to do so I appreciate your experience In that and respect it But I believe the law is clear I would like to suggest That the idea That This gentleman's sole control Was by the county Was never testified to And if you look at page I don't remember the name He said that the scheduling Were you solely under the control Of the county Yes sir as far as the schedule That's what he said The respondent here Has an opportunity to explain Why in the world Didn't it pay this gentleman For the work it claims it was doing for the county Why in the world Didn't it include those wages On their W-2 Why wasn't he paid overtime Why was he paid Much less he would pay for the county Now counsel says I don't think it's particularly important As it was found to be in Chicago That he was working in a different location It was important to the court there It's important to the court here Because it establishes that He's under the control of somebody else The owner of the property The people to whom he Counsel the red light went on Thank you counsel Both for your arguments in this matter This morning it will be taken under advisement Of written disposition